OPINION
{¶ 1} This appeal arises from a judgment of the Hancock County Probate Court that determined the priority of competing claims against Richard Mason's distributive share of Dorothy Mason's estate. The trial court found the order of priority to be: first, Lila Fagan; second, the law firm of Rakestraw 
Rakestraw; and third, Wilma J. Mason. Appellant, Wilma J. Mason, and Cross-Appellant, Rakestraw Rakestraw, challenge this finding, maintaining that the trial court misapplied the time period in which a garnishment lien becomes the effective means of attaching a legatee's interest in an inheritance. Wilma also contends that the trial court erred in finding that her judgments against Richard had become dormant, in finding that her unpaid spousal support was not subject to a superior priority claim, and in finding that R.C. 3121.12(A) was not applicable. After reviewing the entire record before us, we find that the trial court correctly determined the order of priority among the parties. Accordingly, the judgment of the trial court is affirmed.
 {¶ 2} Richard and Wilma Mason had previously been married, but were divorced sometime in 1989. Pursuant to the divorce decree, Richard was required to provide Wilma with periodic support payments, but he never complied with that obligation. On November 18, 1991, Wilma obtained a post-divorce lump sum judgment against Richard for unpaid spousal support from the years 1989 and 1990 in the amount of $22,529.00 plus interest. On August 13, 1992, Wilma acquired another post-divorce lump sum judgment against Richard for past due spousal support from 1991 in the amount of $11,795.00.
 {¶ 3} In January of 1994, Rakestraw Rakestraw represented Richard in certain legal matters, but Richard failed to pay the resulting bill. On August 19, 1994, Rakestraw Rakestraw obtained a judgment against Richard for unpaid legal bills in the amount of $4,251.50 plus court costs and interest.
 {¶ 4} Richard's mother, Dorothy Mason, died on December 3, 1999. Her will was admitted to probate on January 10, 2000, and Richard Mason was listed in her will as an heir and devisee of her estate. On June 12, 2000, Rakestraw Rakestraw revived its 1994 judgment against Richard. On October 3, 2000, Rakestraw 
Rakestraw filed a garnishment for property other than personal earnings against Richard in the amount of $9,133.85, which was then served on the executrix of Dorothy's estate.
 {¶ 5} On October 31, 2001, the Hancock County Child Support Enforcement Agency ("HCCSEA"), filed a motion to intervene on behalf of Wilma in the probate of Dorothy's estate. HCCSEA presented the executrix of Dorothy's estate with a creditor's bill in the amount of $73,481.29, representing the sum Richard owed Dorothy on the two previously obtained judgments for past due spousal support and interest. That same day, the trial court granted an order prohibiting the distribution of any funds to Richard out of Dorothy's estate without authorization.
 {¶ 6} On February 7, 2002, the executrix petitioned the trial court for authorization to distribute funds to Richard. On February 12, 2002, a home in Dorothy's estate was sold, resulting in approximately $60,000.00 becoming available for distribution to Dorothy's heirs. The executrix determined that Richard's share from the sale was approximately $15,000.00.
 {¶ 7} On February 15, 2002, Rakestraw Rakestraw filed a motion to intervene in the probate of Dorothy's estate to present a claim against Richard's interest in the estate in the nature of a creditor's bill. On March 4, 2002, this motion was granted.
 {¶ 8} On March 7, 2002, Appellee, Lila Fagan, obtained a judgment against Richard in the amount of $40,000.00 plus interest. On March 12, 2002, Fagan filed a garnishment for property other than personal earnings against Richard for the full $40,000.00. That garnishment was then served on the executrix of Dorothy's estate.
 {¶ 9} On March 14, 2002, the executrix of Dorothy's estate received a form on behalf of Wilma from HCCSEA entitled, "Order/Notice To Withhold Income For Child Support." On April 4, 2002, Wilma revived both of the judgments she had previously obtained against Richard.
 {¶ 10} On April 26, 2002, Fagan filed a motion to intervene in the probate proceedings regarding Richard's share of Dorothy's estate. She presented her claim in the nature of a creditor's bill.
 {¶ 11} On October 16, 2002, the attorney for Dorothy's estate filed an affidavit with the probate court. The affidavit stated that the executrix of the estate had $15,000.00 available for distribution to Richard. This amount resulted from the February 12, 2002 sale of a home in Dorothy's estate.
 {¶ 12} The trial court reviewed the facts of the case and the relevant law and found that the $15,000.00 should be made available to the parties to satisfy their various judgments against Richard in the following order: first, Fagan; second, Rakestraw Rakestraw; and third, Wilma. From this judgment Wilma appeals, presenting four assignments of error for our review. Additionally, Rakestraw Rakestraw have filed a cross-appeal, presenting one assignment of error for our review.
 Appellant's Assignment of Error I The trial court misapplied the law to the facts in this caseto determine that the one year time period to Ohio Revised CodeSection 2117.06(B) established the date on which the equitableinterests of a legatee in the proceeds from the sale of realestate became legal interests.
 Appellant's Assignment of Error II The trial court erred in finding that the judgments renderedin favor of Appellant (Wilma J. Mason) and against the (spousal)support obligor/legatee, Richard Mason, for $22,529.00 onNovember 18, 1991 and for $11,795.00 on August 13, 1992 hadbecome dormant.
 Appellant's Assignment of Error III The trial court erred when it ruled that DJFS Form 4047 didnot create a priority claim for unpaid spousal support againstthe payment due the legatee.
 Appellant's Assignment of Error IV The sums due Richard F. Mason are lump sum payments and aresubject to attachment pursuant to R.C. 3121.12 and should beordered by the probate court to be remitted forthwith to theHancock County Child Support Enforcement Agency to be applied tohis unpaid (spousal) support arrearage.
 Cross-Appellant's Assignment of Error I The trial court erred as a matter of law and abused itsdiscretion in determining that Rakestraw Rakestraw'sgarnishment proceedings under R.C. 2716.11 were not effective toattach Richard Mason's interest as an heir, devisee, or legateeof Dorothy Mason's Estate.
 {¶ 13} Because of the nature of the assignments of error, we elect to address them out of order.
 Appellant's Assignment of Error II {¶ 14} In her second assignment of error, Wilma claims that the trial court erred by finding that her judgments against Richard had become dormant. She asserts that judgments based upon unpaid spousal support are not subject to Ohio's dormancy and revivor statutes.
 {¶ 15} A judgment that is not executed upon within five years after its issuance becomes dormant and is no longer a valid judgment. R.C. 2329.07. A creditor whose judgment has become dormant must revive the judgment to restore its validity. R.C.2325.15. Installment support orders are not subject to Ohio's dormancy or revivor statutes. Smith v. Smith (1959),168 Ohio St. 447, 451. However, in applying Smith, this Court has found that once the installment support orders have been reduced to a lump sum judgment, the dormancy and revivor statutes begin to apply. Myers v. Myers (2002), 147 Ohio App.3d 85,2002-Ohio-405, at ¶ 36.
 {¶ 16} It is undisputed that Wilma had her unpaid installment support orders from the years 1989, 1990, and 1991 reduced to two lump sum judgments. It is also undisputed that Wilma never executed upon either of her judgments against Richard within five years after the issuance of these lump sum judgments. According to well established law, Wilma's lump sum judgments were subject to the dormancy and revivor statues and became dormant five years after they were issued. Furthermore, Wilma did not revive her judgments until April 4, 2002; over five months after she had filed her creditor's bill. Therefore, Wilma's judgments were dormant at the time she attempted to attach Richard's interest through a creditor's bill.
 {¶ 17} Accordingly, we overrule Wilma's second assignment of error and affirm the judgment of the trial court.
 Appellant's Assignment of Error I Cross-Appellant's Assignment of Error I {¶ 18} In their first assignments of error, both Wilma and Rakestraw Rakestraw challenge the trial court's judgment that a legatee's interest in an estate becomes subject to garnishment one year after the decedent's death. Wilma contends that a legatee's interest becomes an attachable legal interest subject to garnishment when an executor holds specific assets ready for distribution to the legatee. She maintains that, prior to this, a creditor's bill is the only valid method of attaching the legatee's interest.
 {¶ 19} Rakestraw Rakestraw asserts that because the executor is statutorily allowed to disperse funds at any time, a legatee's interest becomes subject to garnishment immediately after an executor is appointed. Alternatively, Rakestraw 
Rakestraw argues that a legatee's interest becomes attachable through garnishment once the legatee has the statutory right to petition the probate court to force distribution.
 {¶ 20} A creditor's bill is well recognized as an equitable remedy. Union Properties, Inc. v. Patterson et al. (1944),143 Ohio St. 192, 195. It allows a judgment creditor to attach an equitable interest of the judgment debtor that cannot be attached through the regular execution process. Id. see, also, R.C.2333.01. "An action in the nature of a creditor's suit under R.C.2333.01 is wholly equitable in nature and, as such, permits the judgment debtor to reach equitable assets which, by reason of encumbrances thereon or uncertainties respecting title or valuation, cannot be effectively subjected under the ordinary legal process of execution by way of judgment liens, attachment or garnishment." Lakeshore Motor Freight Co. v. GlenwayIndustries, Inc. (1981), 2 Ohio App.3d 8, at paragraph one of the syllabus.
 {¶ 21} On the other hand, a garnishment is an action at law. Id. In a garnishment the judgment creditor seeks satisfaction of his debt out of an obligation owed to the judgment debtor by a third party. Id.
 {¶ 22} In Orlopp v. Schueller (1905), 72 Ohio St. 41, the Ohio Supreme Court stated that "[p]roperty or money held by the executor or administrator of an estate in his representative capacity cannot be reached by attachment or garnishee processes in an action against the heir or legatee before an order of distribution has been made." Id. at paragraph one of the syllabus. Thereafter, the Ohio Supreme Court revisited the issue of attaching a legatee's interest prior to distribution and held that "[a] judgment creditor, during the administration of the estate in probate court, and before an order of distribution is made, may maintain an action in the nature of a creditor's bill in the Court of Common Pleas to reach an interest of the judgment debtor-legatee in funds or property in the hands of the executor of such estate." Union Properties, 143 Ohio St. at syllabus. Together, these cases established the precedent that a judgment creditor of a legatee must use a creditor's bill to attach the legatee's interest in an estate prior to an order of distribution and a garnishment to attach the legatee's interest after there has been an order of distribution.
 {¶ 23} In interpreting the above case law, the probate court appropriately noted that subsequent to the holdings in Orlopp
and Union Properties there have been statutory changes to the Ohio Revised Code that have altered the probate process. Under the old statute, any distribution of assets from a decedent's estate required the approval of the probate court through an order of distribution. G.C. 10509-182. The current statute, R.C.2113.53(A), allows the distribution of assets "any time after the appointment of an executor." An order of distribution approved by the probate court is no longer required for an executor to distribute funds to legatees as was the case when Orlopp was decided. Therefore, the probate court correctly determined that this change in the probate process warranted a revisiting of the issue concerning the appropriate method for a judgment creditor to attach a legatee's interest in an estate.
 {¶ 24} The probate court herein relied on the Eighth District's decision in Fidelity and Deposit Company of Marylandv. Walton House (June 14, 1979), 8th Dist. No. 39003. InFidelity, the Eighth District addressed Orlopp and whether an order of distribution was still required before a garnishment could attach to a legatee's interest. The Court held that, "where the sum to be received is definite and not subject to any contingencies which could defeat the heir's interest, an order of distribution by the probate court is not necessary in order for the money to become the property of the heir." In discussing the holdings in both Orlopp and Fidelity, the probate court found that "a testamentary gift does not become the property of a distributee, and thus does not become subject to attachment, until the distributee's right to possess that gift becomes certain. Before such time, the right of the legatee to possess a testamentary gift is merely a contingency, and a creditor's bill is the only means to reach it." Judgment entry of the probate court, page 3.
 {¶ 25} The probate court went on to discuss R.C. 2117.06(B), which at that time barred any claim by a creditor of the estate not presented within a year of the decedent's death.[1] The court reasoned that because all of the valid claims against an estate could be determined one year after the decedent's death, at that time a legatee's inheritance was no longer contingent and became subject to garnishment. Accordingly, the trial court held that a legatee's interest in an estate became subject to garnishment on the earlier date of the order of distribution or one year after the death of the decedent. This Court finds that the bright line test established by the trial court fails to sufficiently address the underlying implications of Orlopp and its progeny.
 {¶ 26} The probate court's ruling focused on portions ofOrlopp that cite the presence of unknown creditors of the estate as a factor that makes a legatee's interest in the estate contingent prior to distribution. Orlopp, 72 Ohio St. at 58-59. However, there are other unknown quantities such as the costs of administering the estate and the value of the legatee's interest that would also cause the legatee's interest to remain contingent. Indeed, there were still many contingencies on Richard's interest in the estate even after all of the creditors of the estate had been established. One year after Dorothy's death the total amount of administrative costs that would be incurred in the selling of the property was still unknown, as was the amount the estate would receive for the property. What amount, if any, Richard's share would be from the sale of the property was not known within the one year time span established by the trial court without making certain assumptions. The Supreme Court specifically stated that even if the executor could say that "there would probably be something due the heir or legatee upon the final settlement of the estate," a legatee's interest remained contingent, and thus equitable, until such time as the executor had an actual amount specifically designated for distribution to the legatee. Id. Until then, the property remained in the custody of the executor and could not be reached by garnishment. Id.
 {¶ 27} The distinction the Supreme Court drew in Orlopp was the difference between an equitable claim and a legal claim. While the estate is unsettled and the property to be distributed to the legatee is undetermined, the legatee's claim remains in the hands of the executor and is an equitable claim subject to attachment only through a creditor's bill. However, once the executor has in his possession a definite amount ready for distribution to the legatee, the claim becomes legal and is subject to a garnishment action.
 {¶ 28} Rakestraw Rakestraw asserts that the statutory language in R.C. 2113.53 allowing an executor to distribute funds at anytime renders a legatee's interest in an estate attachable through garnishment immediately after the appointment of the executor. However, this argument fails to address the contingent language contained in the statute itself. The statute does not confer upon the legatee a right to receive its portion of the estate immediately after the appointment of the executor. Rather, the statute grants the executor complete discretion to determine when and how much of the legatee's share is distributed. It simply allows the executor to disperse funds without an order of distribution. Thus, until the executor has a specific amount ready to distribute to the legatee, the legatee's interest in the estate remains equitable and attachable only through a creditor's bill
 {¶ 29} Alternatively, Rakestraw Rakestraw argues that R.C.2106.01, which allows a legatee to petition the probate court for distribution five months after the decedent's death, creates in a legatee a legal interest that becomes attachable by garnishment. Again, Rakestraw Rakestraw fails to consider the contingent language of the statute. First, a legatee does not have to proceed under this statute and could choose to rely on the regular probate process. Second, the statute does not require the probate court to grant the petition and allow any kind of distribution. Until such time as the executor actually has a specific amount ready for distribution the legatee's interest remains equitable.
 {¶ 30} Accordingly, we hold that a legatee's interest in an estate remains equitable, and thus only attachable through a creditor's bill, until such time as the executor has a definite amount ready for distribution to the legatee. Once this occurs, the legatee's interest becomes legal and may be attached by a garnishment order.
 {¶ 31} In this case, a portion of Richard's share of Dorothy's estate became a definite amount ready for distribution on February 12, 2002. On that day, a home was sold by the executrix and she stood ready to distribute a specific sum of money to Richard. Thus, this portion of the estate became a legal interest and subject to garnishment. However, prior to the February 12 sale, this portion of Richard's share of the estate was equitable and could only have been attached by a creditor's bill. Applying this logic to the timeline of events and facts before us, we find that only Wilma filed a creditor's bill prior to February 12 and that only Fagan filed a garnishment after February 12.
 {¶ 32} To be enforceable, a creditor's bill must be based upon a valid judgment. Harris v. Craig, 8th Dist. No. 79934, 2002-Ohio-5063, at ¶ 24. As stated earlier in this opinion, Wilma's judgments were dormant at the time she filed her creditor's bill and were no longer valid. Wilma's creditor's bill, while filed at the correct time, was of no force because it was based on dormant judgments. Therefore, Wilma failed to properly attach Richard's interest in the estate.
 {¶ 33} That leaves Fagan's garnishment as the only instrument properly attaching to Richard's interest. This is in accordance with the trial court's udgment finding that Fagan had first priority to the funds from the February 12 sale. Furthermore, we agree with the probate court's finding that as between Wilma and Rakestraw Rakestraw, Rakestraw Rakestraw was the first to revive its judgment and to file any action against Richard's share of the estate. Consequently, we uphold the judgment of the trial court finding that Rakestraw Rakestraw should be afforded second priority.
 {¶ 34} Accordingly, we find the judgment of the trial court holding that one year after a decedent's death a legatee's interest automatically becomes an attachable legal interest is in error. However, we also find that the trial court correctly determined the order of priority among the parties as to the $15,000.00 that was available for distribution after February 12. Therefore, although the reasoning of the trial court was flawed, the outcome was correct, and we affirm the judgment of the trial court based upon different grounds.
 Appellant's Assignments of Error III IV {¶ 35} In her third and fourth assignments of error, Wilma maintains the trial court erred in not finding that her judgments were subject to a superior priority claim. However, as previously discussed in this opinion, Wilma allowed her judgments to become dormant. All of the filings she claims granted her a superior priority claim were brought before the probate court prior to the revival of her judgments. Therefore, all of the filings were based upon invalid judgments.
 {¶ 36} Furthermore, Wilma's reliance on the form filed by HCCSEA entitled "Order/Notice To Withhold Income For Child Support" is inappropriate. The record before us shows that Wilma's judgments against Richard are based solely on delinquent spousal support. Nowhere in the record is it indicated that Richard ever owed Wilma any amount for delinquent child support. Indeed, Wilma never even attempts to put forward this argument. Child support orders and awards of spousal support are inherently different in nature. Woodrome v. Woodrome (March 26, 2001), 12th Dist. No. CA2000-05-074, citing Cherry v. Cherry (1981),66 Ohio St.2d 348, 358. Therefore, it would seem inappropriate for a form that is specifically intended for child support to bestow any kind of priority upon judgments based solely upon spousal support.
 {¶ 37} Accordingly, Wilma's third and fourth assignments of error are overruled.
 {¶ 38} Having found no error prejudicial to either the appellant or cross-appellant in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Cupp and Bryant, J.J., concur.
[1] R.C. 2117.06 has been amended and currently provides only six months from the time of the decedent's death for a creditor to present claims against the estate.