[Cite as *Rhodes v. Sinclair*, 2012-Ohio-5603.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| AL RHODES, PERSONAL | ) | |
| REPRESENTATIVE OF THE ESTATE | ) | |
| OF HENRY DiBLASIO, DECEASED, | ) | CASE NO.    11 MA 181 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| R. ALLEN SINCLAIR, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court,
                                 Case No. 10CV4047.

JUDGMENT:                        Affirmed.

APPEARANCES:
For Plaintiff-Appellant:         Attorney Alan Matavich
                                 205 Home Savings Bank Building
                                 32 State Street
                                 Struthers, Ohio  44471

For Defendants-Appellees:        Attorney R. Allen Sinclair
                                 11 Overhill Road
                                 Youngstown, Ohio  44512

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                 Dated:  November 30, 2012

VUKOVICH, J.

{¶1} Plaintiff-appellant Al Rhodes, Personal Representative of the Estate of Henry DiBlasio (referred to as DiBlasio) appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees R. Allen Sinclair, et al. The trial court determined that a complaint sounding in creditor's bill, R.C. 2333.01, is not the appropriate procedure for garnishment of earned or potentially earned attorney fees paid or payable to an attorney in exchange for legal services. For the reasons expressed below, the judgment of the trial court is hereby affirmed.

## STATEMENT OF CASE

{¶2} The parties are in agreement that in September 2005, DiBlasio obtained a money judgment against Sinclair in U.S. District Court, Northern District of Ohio, in the amount of $255,000 plus interest at 3.76% and costs.

{¶3} In October 2010, DiBlasio filed a creditor's bill action naming as defendants Sinclair, a number of Sinclair's clients who had civil actions pending in Mahoning County Common Pleas Court, and the defendants in those actions. When this appeal was filed Sinclair was an attorney, sole practitioner (unincorporated), authorized to practice law in the state of Ohio.[1]

{¶4} Sinclair and some other defendants filed answers to the complaint. Sinclair then filed a motion for summary judgment asserting that his attorney fees are personal earnings protected by federal law that cannot be obtained en masse through a creditor's bill complaint. He argued that they must be garnished through proceedings initiated under R.C 2716.01 through 2716.06.

{¶5} DiBlasio filed a motion in opposition to Sinclair's motion for summary judgment and also filed his own motion for summary judgment. Both motions contended that attorney fees are not "earnings" that are protected by federal law and, as such, the entire amount of attorney fees contracted for with each client should be applied to the judgment against Sinclair. Furthermore, DiBlasio asserted that the garnishment proceedings under R.C. 2716.01 through 2716.06 are inapplicable

---

[1]Since that time, Sinclair has resigned with discipline pending.

because they are designed to receive the personal earnings of a judgment debtor who has a traditional conventional job with steady, periodic pay days and pay checks.

**{¶6}** The magistrate reviewed the arguments and found that Sinclair was entitled to summary judgment. It stated that a complaint sounding in creditor's bill is not the appropriate procedure for garnishment of earned or potentially earned attorney fees paid or payable to an attorney in exchange for legal services. 04/07/11 J.E.

**{¶7}** DiBlasio filed timely objections to the magistrate's decision and Sinclair responded to those objections. 04/14/11 Objections and 04/18/11 Responses to Objections. The trial court reviewed the objections, responses and the magistrate's decision. It concluded that summary judgment for Sinclair was appropriate; the means to garnish Sinclair's attorney fees was not through a creditor's bill action. 10/05/11 J.E. It further concluded that DiBlasio's claims against the remaining defendants rely on the ability to sustain his claims against Sinclair. The trial court entered judgment in favor of Sinclair and provided that there is no just cause for delay. 10/05/11 J.E. DiBlasio timely appeals from that decision.

Assignment of Error

**{¶8}** "The trial court erred in granting appellee Sinclair's motion for summary judgment on appellant's creditor's bill action."

**{¶9}** In reviewing a summary judgment award, we apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we apply the same test as the trial court. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).

**{¶10}** There is not a dispute of facts in this case; rather the dispute is over a legal question. Specifically, whether a sole practitioner's attorney fees that are

contracted with his/her clients is the type of interest that can be pursued by a judgment creditor in a creditor's bill claim under R.C. 2333.01?

**{¶11}** This statute provides:

> When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, any equitable interest which he has in real estate as mortgagor, mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint-stock company, or in a money contract, claim, or chose in action, due or to become due to him, or in a judgment or order, or money, goods, or effects which he has in the possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action.

R.C. 2333.01.

**{¶12}** A creditor's bill action enables a judgment creditor to secure a lien on those assets of the judgment debtor that cannot be reached by mere execution of the judgment. *Am. Transfer Corp. v. Talent Transp., Inc.*, 8th Dist. No. 94980, 2011-Ohio-112, ¶ 8, citing *Union Properties, Inc. v. Patterson*, 143 Ohio St. 192, 54 N.E.2d 668 (1944). An action in the nature of a creditor's suit under R.C. 2333.01 is wholly equitable in nature and, as such, permits the judgment creditor to reach equitable assets which, by reason of uncertainties respecting title or valuation, cannot be effectively subjected under the ordinary legal process of execution by way of judgment liens, attachment, or garnishment. *Am. Transfer Corp.*, citing *Hoover v. Professional & Executive Mtge. Corp.*, 21 Ohio App.3d 223, 225, 486 N.E.2d 1285 (9th Dist.1985). *See also Berg v. Sigcom Group, Inc.*, 8th Dist. No. 86180, 2005-Ohio-6495, ¶ 13.

**{¶13}** There are three elements to a claim under R .C. 2333.01: (1) the existence of a valid judgment against a debtor, (2) the existence of an interest in the debtor of the type enumerated in the statute, and (3) a showing that the debtor does not have sufficient assets to satisfy the judgment against him. *Am. Transfer Corp.*,

citing *Richardson v. Fairbanks*, 10th Dist. No. 97APE03-384, 1997 WL 677987 (Oct. 28, 1997).

{¶14} The parties agree that there is a valid judgment against DiBlasio. Thus, the first element is met. The parties disagree as to whether the two remaining elements are met.

{¶15} DiBlasio asserts that the interest element may be found in the fee contracts Sinclair has with his clients. Thus, according to DiBlasio, the interest is money contracts. He further asserts that no one knows when the fees will be paid or how much Sinclair will receive. He claims that this is an uncertainty that R.C. 2333.01 is designed to address.

{¶16} Conversely, Sinclair contends that the fees he collects are his personal earnings and the appropriate avenue is garnishment under R.C. 2716.01 et al., not a creditor's bill under R.C. 2333.01. He asserts that case law abundantly supports that position. He further asserts that the federal definition of "earnings" includes attorney fees.

{¶17} Thus, the question we must decide is whether attorney fees are personal earnings or wages that are subject only to garnishment, or are they some other creature that would instead be subject to a creditor's bill action.

{¶18} We begin our analysis by looking at the difference between nondiscretionary earnings and discretionary earnings as explained by our sister district. Discretionary income is not payment for services rendered; rather it is payment that the worker is not automatically entitled to, such as a bonus based on the availability of the company's profits for the year. *Am. Transfer Corp.*, 8th Dist. No. 94980, 2011-Ohio-112, at ¶ 14. Discretionary income is accessible only through a creditor's bill, but is reachable in the full amount. *Harris v. Craig*, 8th Dist. No. 79934, 2002-Ohio-5063, ¶ 19. Non-discretionary earnings, on the other hand, are payments to the employee based on an amount he is entitled to for services he has rendered. *Am. Transfer Corp.* Therefore, if the money being sought constituted non-discretionary earnings, then garnishment is the proper avenue to obtain payments. *Id.* at ¶ 13-14.

**{¶19}** Furthermore, it has been explained unlike a creditor's bill action, a garnishment is an action at law. *In re Estate of Dorothy Mason*, 3d Dist. No. 5-04-01, 2004-Ohio-5644, ¶ 21. In a garnishment the judgment creditor seeks satisfaction of his debt out of an obligation owed to the judgment debtor by a third party. *Id.*

**{¶20}** From a review of the case law, a creditor's bill is used in situations such as when there is a potential settlement for insurance proceeds or an interest in an estate. For instance, it has been explained that a legatee's interest in an estate remains equitable, and thus only attachable through a creditor's bill, until such time as the executor has a definite amount ready for distribution to the legatee, which that at that point attachment may be done through garnishment. *Id.* at ¶ 30.

**{¶21}** Thus, given the above, a creditor's bill is not the correct means to obtain a person's "personal earnings."

**{¶22}** DiBlasio asserts that when looking at the Ohio statutes on garnishment, attorney fees do not qualify as "personal earnings."

**{¶23}** R.C. 2716.01 through 2716.06 governs garnishment. R.C. 2716.01(A) states:

A person who obtains a judgment against another person may garnish the personal earnings of the person against whom judgment was obtained only through a proceeding in garnishment of personal earnings and only in accordance with this chapter.

R.C. 2716.01(A).

"Personal earnings" is defined as:

'Personal earnings' means money, or any other consideration or thing of value, that is paid or due to a person in exchange for work, labor, or personal services provided by the person to an employer.

R.C. 2716.01(C)(2).

**{¶24}** DiBlasio contends that legal services are not listed and thus, do not constitute "personal earnings." As such, he contends that garnishment is not an option to obtain attorney fees. A similar argument has been made when discussing a

real estate agent's commission. *BancOhio Natl. Bank v. Box*, 63 Ohio App.3d 704, 580 N.E.2d 23, (11th Dist.1989).

{¶25} The Eleventh Appellate District explained that while the Ohio statute does not appear to include the garnishment of a real estate agent's commission, the evaluation of the exemption claim does not end with the analysis of the statute. *Id.* at 706. The court found that the federal law is more restrictive; the federal Consumer Credit Protection Act, Section 1671 *et seq.,* Title 15, U.S.Code, had a more inclusive definition of "earnings" than does the Ohio statute. *Id.* Under the federal statute, "earnings" means "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise * * *." *Id.*, citing Section 1672(a), Title 15, U.S.Code. Thus, the federal definition is more restrictive and includes commissions. *Id.*

{¶26} The Medina Municipal Court in applying the holding in *BancOhio*, further explained:

> The purpose of the Consumer Credit Protection Act is to provide protection to debtors from having their entire source of earnings garnished or attached by a judgment creditor. The federal restrictions on garnishment apply to this proceeding. Section 1673(c), Title 15, U.S.Code ('No court of * * * any State * * * may make, execute, or enforce any order or process in violation of this section).' See *Hodgson v. Cleveland Mun. Court* (N.D.Ohio 1971), 27 Ohio Misc. 121, 326 F.Supp. 419. If this court merely adopts the definition of personal earnings in R.C. 2716.01, which excludes real estate commissions, then real estate commissions become property other than personal earnings and the entire commission is subject to garnishment by a creditor. See *Bank One, Cleveland, N.A. v. Lincoln Electric Co., Inc.* (1990), 55 Ohio Misc.2d 7, 563 N.E.2d 381.

> The result of such an action places real estate salespersons in the position in which all of their earnings would be subject to

garnishment or attachment by a judgment creditor in contravention of the Consumer Credit Protection Act.

*Smythe Cramer Co. v. Guinta*, 116 Ohio Misc. 2d 20, 22-23, 762 N.E.2d 1083 (M.C.2001).

**{¶27}** The court then adopted the holding in *BancOhio* and found that real estate commissions are personal earnings subject to garnishment. *Id*.

**{¶28}** While these are not attorney fees cases, they do demonstrate that there appears to be disfavor in attaching through a creditor's bill the entire earnings of an unincorporated sole practitioner.

**{¶29}** This view is supported by a decision out of the United States Bankruptcy Court, Southern District of Ohio. *In re Jones*, 318 B.R. 841 (Bankr.S.D.Ohio 2005).

In the definitions section, the CCPA provides a broad definition of 'earnings' encompassing 'compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise * * *.' 15 U.S.C. § 1672. The various forms of payment for personal services described and the use of the language 'or otherwise' indicates a broad protection of earnings for personal services in whatever form they are paid. *Id.; In re Pruss,* 235 B.R. 430, 433–34 (8th Cir. BAP 1999), *vacated following dismissal of bankruptcy case,* 229 F.3d 1197 (8th Cir.2000), 255 B.R. 314 (8th Cir. BAP 2000).

Although the *Pruss* opinion of the Eight Circuit Bankruptcy Appellate Panel was vacated following the dismissal of the underlying bankruptcy case leaving it with no effect as law, the reasoning of this court is compelling. In *Pruss,* the Eighth Circuit Bankruptcy Appellate Panel was faced with the issue of whether an attorney who had filed for bankruptcy protection could claim an exemption in accounts receivable under the garnishment protection laws of Nebraska that were modeled after the CCPA. 235 B.R. at 432–33. The court reviewed the garnishment statute's definition of earnings, which was identical to the

definition of earnings in the CCPA. The court concluded that the definition was broad enough to encompass and protect an attorney's accounts receivable to the extent they were payment for personal services. *Id.* at 433. The court noted that although the accounts receivable were not salary or wages in the traditional sense, they were 'earnings' to the extent they were fees generated by the attorney for the performance of legal services. *Id.*

Furthermore, the *Pruss* majority rejected the minority's reliance on the definition of 'disposable earnings' to exclude independent contractors. First, the majority concluded that the term 'disposable earnings' was used in the garnishment statute only to determine that part of a person's compensation that was subject to garnishment and not what categories of compensation are protected in the first place. *Id.* at 434. Second, that part of the definition of 'disposable earnings' limiting it to earnings leftover after deducting those amounts 'required by law' did not serve to exclude independent contractors or self-employed individuals. *Id.* at 435. Although such workers lack an employer who is required to withhold amounts from the workers' earnings, the 'absence of withholding does not preclude a self-employed individual from the benefits of the garnishment exemption statute.' *Id.* To hold otherwise would create the 'absurd result that, in the case of an attorney, the exemption would be available to a sole practitioner who works through his or her own professional corporation but would not be available to the sole practitioner who avoids the mechanics of incorporation.' *Id.*

*Id.* at 849-850.

**{¶30}** The court favorably cited the *BancOhio* opinion and found that the language of the CCPA supports its application to independent contractors, meaning earnings encompass compensation for personal services in whatever form that compensation takes. *Id.*

**{¶31}** That said, there is one case in Ohio where a creditor's bill was used to obtain attorney fees. *Huntington Center Assoc. v. Schwartz, Warren & Ramirez*, 10th Dist. No. 00AP-35, 2000 WL 1376524. In that case, Kelm resigned as a partner from the firm of Schwartz, Warren & Ramirez (SWR). Several clients of the SWR partnership terminated their relationship with SWR and became Kelm's clients. Kelm negotiated a written agreement with SWR where he owed SWR a portion of the attorney fees and expenses recovered on pending matters in which SWR had formerly been legal counsel. SWR leased space from Huntington Center and Huntington Center obtained a judgment against SWR for past due rent. In an attempt to obtain the judgment, Huntington Center filed a creditor's bill seeking to attach the attorney fees SWR would collect from Kelm pursuant to the written agreement between Kelm and SWR.

**{¶32}** The appellate court found a creditor's bill was appropriate and found that attorney fees were included in those types of interest that can be attached under R.C. 2333.01:

> Appellants argue that appellee failed to establish the second element of a creditor's bill for a variety of reasons. Appellants contend that the interest at issue attorney fees and expenses that Kelm may recover from litigation initiated on behalf of the Kelm clients-is not the type of interest enumerated in the statute. This court concludes, however, that R.C. 2333.01 is broad enough to include future attorney fees and expenses. The contractual agreement between Kelm and the SWR partnership provides the partnership with a claim for a share of fees. See *Gem Savings Assn. v. Foreman* (Apr. 18, 1986), Montgomery App. No. CA-9667, unreported (noting that, under R.C. 2333.01, '[t]he term "claim" is comprehensive, and would embrace a demand for money in varied forms, whether on contract, express or implied'). The claim could extend to the Kelm clients should they fail to pay fees to Kelm as might be required by law.

*Id.*

**{¶33}** Thus, this case does permit a creditor's bill to obtain attorney fees. However, it is distinguishable because the attorney fees are being obtained from a written contract of settlement. It was the agreement of SWR and Kelm that when Kelm left the firm and took some of the clients, SWR would still get a portion of the attorney fees on pending matters in which SWR had been counsel. This is not in essence personal earnings, but rather is a settlement agreement, like insurance proceeds or a disbursement from an estate.

**{¶34}** When reviewing all of the above, we hold that in this instance a creditor's bill cannot be used to garnish all of the sole practitioner's fees obtained for legal services. That said, DiBlasio's frustration is warranted. From the record it appears that Sinclair is not going to pay the judgment willingly. A Texas appellate court has explained that obtaining a judgment from a sole practitioner is difficult because the sole practitioner's income comes from retainer fees and billing at an hourly rate; "Income of this nature, attorney fees, is inherently difficult to get to satisfy a judgment." *Hennigan v. Hennigan*, 666 S.W.2d 322, 324 (Tex.App.1984) (discussing the appointment of a receiver). *Id.*

**{¶35}** In conclusion, considering all of the above, the judgment of the trial court is hereby affirmed. Attorney fees earned as a result of legal representation, even when secured by a written fee agreement, are earnings as contemplated by 15 U.S.C. 1671(a) and, as such, are protected by federal law. Therefore, a complaint sounding in creditor's bill is not the appropriate procedure for garnishment of earned or potentially earned attorney fees paid or payable to an attorney in exchange for legal services. *See also* 10/05/11 J.E.

Donofrio, J., concurs.
DeGenaro, J., concurs.